James W. Anderson (9829) jwa@clydesnow.com
T. Edward Cundick (10451) tec@clydesnow.com
Kody L. Condos (17186) klc@clydesnow.com
**CLYDE SNOW & SESSIONS**
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111
Telephone: (801) 322-2516
Fax No.: (801) 521-6280

Counsel for the Chapter 11 Trustee, Mark D. Hashimoto

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>**THEODORE LAMONT HANSEN**<br><br>Debtor. | **Bankruptcy Case No. 19-26528**<br>**Chapter 11**<br><br>**Judge Kevin R. Anderson** |

## MOTION TO APPROVE SETTLEMENT AGREEMENT WITH BRANDEN HANSEN

Mark D. Hashimoto (the **"Trustee"**), as Trustee of the Chapter 11 bankruptcy estate of Theodore Lamont Hansen (**"Debtor"**), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, respectfully submits this Motion to Approve Settlement Agreement with Branden Hansen (the "**Motion**"). A copy of the Settlement Agreement (the "**Agreement**") is attached hereto as Exhibit "A". In support of this Motion, the Trustee represents as follows:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicate on which this Motion is based is Bankruptcy Rule 9019.

## BACKGROUND

3.      On September 5, 2019 (the **"Petition Date"**), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

4.      On June 16, 2020, the Court entered its "Order Granting Motion to Appoint Chapter 11 Trustee" (Docket no. 120).

5.      No committee has been formed in the case.

6.      The United States Trustee initially appointed David Miller as interim Chapter 11 Trustee, but after an election, Mark D. Hashimoto was elected as Chapter 11 Trustee, and an order acknowledging that election and appointing the Trustee was entered August 24, 2020.

7.      One of the principal assets of the estate is a claim in litigation known as the **"Brinton Litigation,"** whereby the estate asserts that it is entitled to damages in excess of $30,000,000.00.

8.      A significant number of creditors support the Trustee in pursuing the Brinton Litigation, and, through orders entered by this Court, have lent funds to the estate for the purpose of the Trustee investigating the claims of the Brinton Litigation and administering this case.

9.      Through investigation of the Debtor and his brother, Branden Hansen ("**Branden**"), the Trustee has determined that the Debtor and Branden considered themselves to be fifty/fifty participants in a joint venture (the "**Hansen Partnership**") which owns membership and equity interests in a number of companies.

10.     The Hansen Partnership is not, in and of itself, a separate entity, though several of the entities at issue are documented as being jointly owned by the Debtor and Branden.

{01874523-1 }

Nevertheless, the Debtor and Branden considered themselves as equal partners in the business ventures comprising the Hansen Partnership.

11.    The Trustee has also determined that there are claims comprising the Brinton Litigation which belong to entities owned by the Debtor and Branden jointly through the Hansen Partnership.

12.    A significant amount of the claims against the Debtor are also direct claims against the Hansen Partnership or entities owned or controlled by the Hansen Partnership.

13.    The business records of the entities holding such claims, in some instances, identify Branden as the manager, or as a manager.    Therefore, cooperation between the Trustee and Branden is inevitable and necessary to prosecute the Brinton Litigation.

14.    The Trustee and Branden believe that the best chance of recovery in the Brinton Litigation is to have the Trustee hold and control all of the claims of the Brinton Litigation, and in a unified fashion, prosecute the same for the benefit of the Hansen Partnership, which thereby benefits the estate and Branden.    Therefore, the Trustee and Branden have entered into the Agreement to accomplish the same.

## OVERVIEW OF THE AGREEMENT

15.    Reference is made to the Agreement for its specific terms.    In the event there is any discrepancy between this Motion and the Agreement, the terms of the Agreement shall control, except if specifically stated herein that it is a change to the Agreement.    In summary, the Agreement provides as follows:

      a.    <u>Branden Assignment</u>.    As part of the Agreement, Branden and the Trustee have executed the Assignment of Claims and Rights Agreement, attached to the

{01874523-1 }

Agreement as Exhibit A thereto, which assigns the claims of the Brinton Litigation from Branden to the Trustee.

b. <u>Litigation Control</u>.  The Trustee shall have control over all decisions regarding the Brinton Litigation.  Branden agrees to cooperate with the Trustee and assist in prosecuting the Brinton Litigation.  The Trustee agrees to consult with Branden and Branden's counsel throughout all proceedings related to the Brinton Litigation.  Branden's counsel shall remain counsel of record for Branden's interest in the Hansen Partnership.  Branden shall be responsible for all costs of Branden's counsel.

c. <u>Sharing of Proceeds</u>.  Proceeds from the claims related to the Hansen Partnership in the Brinton Litigation (the "**Proceeds**") shall be paid to the bankruptcy estate, and distributed in accordance with a confirmed plan of reorganization that contains the following distribution scheme.  The Proceeds will be used to first pay allowed administrative claims of the bankruptcy estate. Next, fifty percent (50%) of the remaining Proceeds shall be allocated to a plan fund for distributions to creditors of the Hansen Partnership and Branden (the "**Partnership Fund**").  The other fifty percent (50%) shall be allocated to a plan fund for general unsecured creditors of the bankruptcy estate, including creditors of the Hansen Partnership (the "**Estate Fund**").  The Partnership Fund shall be used to pay fifty percent (50%) of the claims of the Hansen Partnership creditors and related expenses, with the remaining balance of that fund being paid to Branden.  The Estate Fund shall pay all general unsecured creditors of

4

the bankruptcy estate, including fifty percent (50%) of the Hansen Partnership

creditor claims, including related expenses, pro rata based on all participating

creditors of both the Hansen Partnership and the bankruptcy Estate.

d.  <u>Mutual Release of Claims</u>.  Branden releases the Debtor, the bankruptcy estate,

the Trustee, and their representatives and assigns from any and all claims of any

kind or character.  The Trustee releases Branden and his representatives and

assigns from any and all claims arising from the Hansen Partnership, including

claims arising under Chapter 5 of Title 11 of the United States Code arising in

this bankruptcy case.

## <u>LEGAL AUTHORITY AND ANALYSIS</u>

16.    Pursuant to Bankruptcy Rule 9019, "after notice and a hearing, the court may

approve a compromise or settlement."  In the Tenth Circuit, while it is within the Court's discretion

to approve a compromise or settlement, the Court's decision "must be 'an informed one based

upon an objective evaluation of developed facts.'"  In re *Kopexa Realty Venture Co.*, 213 B.R.

1020, 1022 (10th Cir. BAP 1997) (internal citation omitted).

> In considering the propriety of the settlement it is appropriate for the court to
> consider the probable success of the underlying litigation on the merits, the possible
> difficulty in collection of a judgment, the complexity and expense of the litigation,
> and the interests of creditors in deference to their reasonable views.

*Id.*  Analyzing these four factors, the bankruptcy estate's risk of litigating the ownership of the

claims comprising the Brinton Litigation is unknown.  The Trustee has determined that there is

significant evidence that the Debtor and Branden considered themselves to be 50/50 partners in

the Hansen Partnership.  Therefore, there is a significant chance that the Trustee could prosecute

the Brinton Litigation to recovery, only to have Branden assert a claim to half of the proceeds

{01874523-1 }

before they reach the bankruptcy estate.  Likewise, due to the intertwined nature of the claims in the Brinton Litigation and the lack of clarity on which exact entity holds which claims, and who manages such entity, it would be a significant impediment to the Trustee to merely be a co-plaintiff with Branden in the Brinton Litigation, without full control over the prosecution and settlement of such claims.  Finally, the Trustee and Branden would need to go through the cumbersome and imprecise calculation of allocating the Proceeds between each of the entities owned by the Hansen Partnership, in order to properly pay the specific creditors of specific entities.  Due to the nature of the claims, the Trustee believes this would be impossible to calculate in a fair and unassailable manner.  Creditors of a specific entity would necessarily assert a claim that the amount of the Proceeds allocated to such entity are insufficient to cover the claims against such entity, and could assert any number of points as to why more of the Proceeds should be allocated to said entity.  Of course, allocation of Proceeds to one entity is to the detriment of every other entity, and the creditors of every other entity.  Furthermore, the creditors of such entities are the same creditors of the bankruptcy estate, largely asserting such claims against the Debtor as the personal guarantor of such claims.

Maximizing the recovery to creditors and simplifying the collection process through a confirmed plan is why the fourth Kopexa factor argues strongly in favor of approving the Agreement.  The Agreement vests all control of the Brinton Litigation in the Trustee, and creates a fair process for payment of all the claims of the bankruptcy estate.  First, the creditors of the bankruptcy estate who are also creditors of the Hansen Partnership will receive payments from the plan funds for both Branden and the bankruptcy estate.  This ensures that these creditors benefit the most from the claims held by the Hansen Partnership, which upholds traditional state law

{01874523-1 }

paying the assets of the entities who hold the claims to the creditors of those entities. However, the bankruptcy estate's creditors who are not also creditors of the Hansen Partnership still benefit by being able to participate in the bankruptcy estate's portion of the Proceeds. The Trustee believes this is a fair approach to balance the interests of all the creditors, including Branden as a creditor for potentially half of the proceeds.

Branden also shares in all of the costs of litigation and administration of the bankruptcy estate. The first portion of the Proceeds are paid for allowed administrative claims, which will largely be fees in prosecuting the Brinton Litigation, but may also include any remaining claims of professionals and others providing services to the estate. Certainly Branden would have an argument that he should not shoulder this burden, but he is compromising the same in favor of the release of claims and distribution scheme in the Agreement.

17.    The Agreement is a proper exercise of the Trustee's business judgment, as determined under the *Kopexa Factors.* Therefore, the Court should approve the Agreement.

WHEREFORE, the Debtors respectfully request that the Court enter an Order approving the Agreement, and granting such further relief as is just and proper.

DATED this 21st day of May 2021.

**CLYDE SNOW & SESSIONS**

*/s/ James W. Anderson*
James W. Anderson
Counsel for Mark D. Hashimoto, Chapter 11
Trustee

7

**EXHIBIT "A"**
**TO**
**MOTION TO APPROVE SETTLEMENT AGREEMENT WITH BRANDEN HANSEN**

{01874523-1 }

## SETTLEMENT AGREEMENT

This Settlement Agreement ("**Agreement**") is made and entered into this _/O_ day of May, 2021, by and between Branden Hansen ("**Hansen**") and Mark D. Hashimoto ("**Trustee**"), as Chapter 11 Trustee for the bankruptcy estate (the "**Estate**") of Debtor Theodore Lamont Hansen in bankruptcy case captioned *In Re Theodore Lamont Hansen*, Case No. 19-26528, United States Bankruptcy Court for the District of Utah ("**Bankruptcy Case**")

### R E C I T A L S:

A.    Hansen and Theodore Hansen are fifty/fifty participants in a joint venture (the "**Hansen Partnership**") which owns membership and equity interests in a number of companies.

B.    The companies owned by the Hansen Partnership have claims against Gary Brinton and other entities and individuals affiliated and associated with Mr. Brinton (the "**Litigation Claims**").

C.    The Trustee has claims against Hansen arising from the Hansen Partnership, including claims arising under Chapter 5 of Title 11 of the United States Code.

D.    The parties have resolved such claims in accordance with the terms and conditions set forth below.

### A G R E E M E N T:

NOW, THEREFORE, in consideration of the mutual covenants and obligations contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.     Contemporaneously with the execution of this Agreement, Hansen shall cause to an Assignment of Claims and Rights Agreement to be executed by each company owned by the Hansen Partnership, conveying to the Trustee all Litigation Claims.  The Assignment of Claims and Rights Agreement is attached hereto as Exhibit "A."

2.     Proceeds from the Litigation Claims arising from property or claims of the Hansen Partnership (the "**Proceeds**") shall be paid to the Estate and distributed in accordance with a confirmed plan of reorganization that contains the following distribution scheme.  The Proceeds will be used to first satisfy allowed administrative costs of the Estate.  Then, fifty percent (50%) of the remaining Proceeds shall be allocated to a plan fund for distributions to creditors of the Hansen Partnership and Hansen (the "**Partnership Fund**").  The other fifty percent (50%) shall be allocated to a plan fund for general unsecured creditors of the Estate, including creditors of the Hansen Partnership (the "**Estate Fund**").  The Partnership Fund shall be first used to pay fifty percent (50%) of the claims of the Hansen Partnership creditors and related expenses, with the remaining balance of that fund being paid to Hansen. The Estate Fund shall pay all general unsecured creditors of the Estate, including fifty percent (50%) of the Hansen Partnership creditor claims, including related expenses, pro rata based on all participating creditors of both the Hansen Partnership and the Estate.

2

3.     All decisions regarding the Litigation Claims, including decisions as to the prosecution and settlement of such claims, shall reside solely with the Trustee, who shall exercise such discretion in accordance with applicable law. Hansen agrees to reasonably cooperate and assist with the prosecution and/or settlement of the Litigation Claims. The Trustee shall reasonably cooperate with Hansen and meaningfully consult with and include his counsel, who will be counsel of record for Hansen's interest in the Hansen Partnership throughout all proceedings related to the Litigation Claims, his counsel in all material decisions, including strategy, and proceedings during the prosecution and settlement of such claims. All costs to Hansen related to the Litigation Claims, including legal fees, shall be an expense of Hansen.

4.     In consideration of the actions and transactions set forth herein, Hansen, and his respective representatives, affiliates, trustees, assigns, partners, subsidiaries, parents, employees, and agents, fully and forever release and discharge Theodore Hansen, the Estate, and the Trustee and their respective representatives, affiliates, trustees, assigns, partners, subsidiaries, parents, employees, insurance company and agents, from any and all claims, demands, debts, obligations, liabilities, costs, expenses, rights of action, causes of action, or judgments of any kind or character whatsoever, at law or equity, whether known, unknown, suspected, or unsuspected, arising prior to the date hereof.

5.     In consideration of the acts and transactions set forth herein, the Trustee, on behalf of the Estate, fully and forever releases and discharges Hansen and his representatives, affiliates, trustees, assigns, partners, subsidiaries, parents, employees, insurance company and agents, from any and all claims, demands, debts, obligations, liabilities, costs, expenses, rights of action, causes of action, or judgments arising from the Hansen Partnership, including any

3

avoidance actions under Chapter 5 of Title 11 of the United States Code arising in the Bankruptcy Case.

6.      The claims released by the Parties pursuant to paragraphs 4 and 5 of this Agreement are collectively referred to as the "**Released Claims.**"

7.      Each party acknowledges that they may hereafter discover facts different from or in addition to those which they now know or believe to be true with respect to the Released Claims and each agrees that this Agreement shall be and remain effective in all respects notwithstanding such different or additional facts or the discovery thereof.

8.      The Parties acknowledge that, except as expressly stated in this Agreement, no party (nor any of their agents, employees, attorneys, or representatives) has made any statement or representation to any other party regarding any fact relied on by any other party in entering into this Agreement.  Each party specifically acknowledges that they have not relied on any statement, representation, or promise of any other party, or of any of their agents, employees, attorneys, or representatives, in executing this Agreement, except as expressly set forth herein. In addition, each party acknowledges that they are under no duress or undue influence and that each executes this Agreement as an act of their own voluntary will.

9.      Each party acknowledges that they and their attorneys have made such investigation of facts pertaining to this Agreement and all matters pertaining thereto, as deemed necessary.

10.     This Agreement shall be binding on and inure to the benefit of the Parties hereto and their heirs, personal representatives, successors, and assigns.  By executing this Agreement, however, the Parties do not intend to bestow any benefit on any non-party to this Agreement.

4

11.   The effectiveness of this Agreement is specifically conditioned upon approval of such by the United States Bankruptcy Court in the Bankruptcy Case. The Trustee shall take appropriate steps and make a good faith effort to seek such approval.

12.   Each individual executing this Agreement hereby represents and warrants to each person so signing (and to each other entity for which another person may be signing) that he or she has been duly authorized to execute and deliver this Agreement in the capacity of the person or entity set forth for which he or she signs.

13.   Each party has cooperated in the drafting and preparation of this Agreement. In any construction to be made of this Agreement, or of any of its terms and provisions, the same shall not be construed against any party.

14.   If any party shall seek to enforce or protect its rights under this Agreement or under any document or instrument executed and delivered in connection herewith in any action, suit, arbitration case, or other proceeding, including all bankruptcy cases and proceedings, the prevailing party shall be entitled to receive from the other party payment of its costs and expenses, including reasonable attorneys' fees incurred (whether such costs or fees are incurred before or after the commencement of the proceeding), including any and all appeals or petitions therefrom.

15.   This Agreement may be executed in any number of counterparts, whether by facsimile or otherwise, and each of which when so executed and delivered, shall be deemed an original; and all such counterparts together shall constitute one and the same instrument.

16.    This Agreement set forth the entire understanding of the Parties as to the matters set forth herein and cannot be altered or otherwise amended except pursuant to an instrument in writing signed by each of the Parties hereto.


Dated: _____    _____
Mark D. Hashimoto, as Trustee in the Bankruptcy Case.



Dated: *5-10-21*    _____
Branden Hansen


6

16.     This Agreement set forth the entire understanding of the Parties as to the matters

set forth herein and cannot be altered or otherwise amended except pursuant to an instrument in

writing signed by each of the Parties hereto.

Dated: 5/17/21

_____
Mark D. Hashimoto, as Trustee in the Bankruptcy Case.

Dated: 5-10-21

_____
Branden Hansen

6

## ASSIGNMENT OF CLAIMS AND RIGHTS AGREEMENT

This Assignment of Claims and Rights Agreement (this "**Agreement**") is entered into on May __16__, 2021 (the "**Effective Date**") and is by and between Branden Hansen and the various entities controlled by Branden Hansen, listed in Exhibit "A" ("**Assignors**") and Mark D. Hashimoto ("**Assignee**"), as Chapter 11 Trustee for the bankruptcy estate of Debtor Theodore Lamont Hansen in bankruptcy case captioned *In Re Theodore Lamont Hansen*, Case No. 19-26528, United States Bankruptcy Court for the District of Utah (the "**Bankruptcy Estate**"). The Assignors and Assignee may be referred to as a "**Party**" and collectively as the "**Parties**" herein.

## RECITALS

A.  Assignors are owners of certain claims and causes of action against Gary Brinton and other entities and individuals affiliated and associated with Mr. Brinton (collectively the "**Brinton Parties**") based upon the conduct of the Brinton Parties with respect to Theodore Lamont Hansen and his various business interests and creditors, including, but not limited to claims asserted in existing court actions (the "**Litigation Claims**").

B.  Assignors are entities owned by or subject to a joint venture agreement between Theodore Hansen and Branden Hansen (the "**Hansen Partnership**").

C.  Assignee has claims against Branden Hansen and Assignors arising from the Hansen Partnership.  Such claims have been resolved by a contemporaneous settlement agreement, which contemplates execution of this Assignment.

D.  Assignor and Assignee share a common interest in the prosecution of the Litigation Claims.

E.  Assignors desire to assign to Assignee the Litigation Claims and Assignee desires to receive assignment of the Litigation Claims, as more fully set forth herein.

NOW THEREFORE, in consideration of the mutual covenants and promises herein contained, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## AGREEMENT

1.      Assignors hereby assigns, transfers, sets over to Assignee all of Assignors' rights in and to any Litigation Claim they have or may have, including the right to pursue and recover based on such Litigation Claim.  Assignee hereby receives and purchases all of Assignor' right, title, and interest in and to said Litigation Claims.

2.      Assignee shall have the right to pursue and resolve the Litigation Claims, in his sole discretion, in accordance with the requirements of applicable law. Branden Hansen and his counsel, who will be counsel of record for Hansen's interest in the Hansen

Partnership throughout all proceedings related to the Litigation Claims, shall have the right to consult with and assist Assignee, and Assignee hereby agrees to meaningfully consult with and include Hansen's counsel, in all material decisions, including strategy, and proceedings during the prosecution and/or resolution of the Litigation Claims.

        3.    Assignors represent and warrant that Assignors are the true and lawful holders of the Litigation Claims, and that Assignors have not transferred, in whole or in part, any portion of the Litigation Claims to any third party. Assignors further represent and warrants that Assignor has not pledged the Litigation Claims as collateral or otherwise encumbered the Litigation Claims, and that the transfer of the Litigation Claim pursuant to this Agreement is free and clear to Assignee.

        4.    This Assignment is binding upon and inures to the benefit of Assignors and Assignee and their respective heirs, executors, administrators, successors, and assigns. This Assignment may be: (i) executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument; and (ii) delivered by e-mail.

        5.    Miscellaneous.

        A.    <u>Entire Agreement</u>. This Agreement sets forth the entire agreement and understanding among the Parties with reference to the transactions contemplated hereby and supersede any and all other oral or written agreements heretofore made.

        B.    <u>Severability</u>. If any provision of this Agreement or the application of any provision hereof to any person or in any circumstances is held invalid, the remainder of this Agreement and the application of such provision to other Persons or circumstances shall not be affected unless the provision held invalid shall substantially impair the benefits of the remaining portions of this Agreement.

        C.    <u>Further Assurances</u>. Assignors shall furnish to the Assignee any further instruments, in form and substance reasonably satisfactory to the Assignee, as applicable, which he may reasonably require or deem necessary, from time to time, to evidence, establish, protect, enforce, defend or secure it and any and all of his rights hereunder.

        D.    <u>Amendments; Waivers</u>. (i) Any term, covenant, agreement, or condition of this Agreement may only be amended with the consent of each party hereto and (ii) compliance with any such term, covenant, agreement, or condition may be waived (either generally or in a particular instance and either retroactively or prospectively) by the consent of each party hereto.

        E.    <u>Relationship of Parties</u>. Except as provided herein, nothing contained in this Agreement is intended to create, or shall in any event or under any circumstance be construed as creating, a partnership, joint venture, tenancy-in-common, joint tenancy, agency, or other relationship of any nature whatsoever between Assignors and Assignee.

F.     <u>Governing Law; Venue</u>.  The terms of this Agreement shall be construed in accordance with the laws of the State of Utah, as applied to contracts entered into by Utah residents within the State of Utah, and to be performed entirely within the State of Utah. Any action brought by any party hereto shall be brought within the State of Utah, County of Salt Lake.

G.     <u>Counterparts</u>.   This Agreement may be executed in any number of counterparts, each of which so executed shall be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument. Faxed, emailed, or electronic signatures shall be accepted as originals.

[Signatures on next page]

IN WITNESS WHEREOF, this Assignment of Claims and Rights Agreement has been executed by the duly authorized signatories of the parties hereto all as of the day and year first above written.

**"Assignors"**

_____
Brandon Hansen

BT Holdings of Utah, LLC

By: _____
Its: Manager - Member

1481 Dewey NY, LLC

By: _____
Its: Manager - Member

885 Park Avenue, LLC

By: _____
Its: Member and/or Manager

1433 S 107 E. OK, LLC

By: _____
Its: Member and/or Manager

Estrella Group, LLC

By: _____
Its: Member and/or Manager

Estrella PM, LLC

By: _____
Its: Member and/or Manager

**"Assignee"**
Mark D. Hashimoto,

_____
Chapter 11 Trustee for the Bankruptcy Estate of Theodore Lamont Hansen

Page 4 of 7

IN WITNESS WHEREOF, this Assignment of Claims and Rights Agreement has been executed by the duly authorized signatories of the parties hereto all as of the day and year first above written.

"**Assignors**"

Brandon Hansen

BT Holdings of Utah, LLC

By:
Its:    Manager - Member

1481 Dewey NY, LLC

By:
Its:    Manager - Member

885 Park Avenue, LLC

By:
Its:    Member and/or Manager

1433 S 107 E. OK, LLC

By:
Its:    Member and/or Manager

Estrella Group, LLC

By:
Its:    Member and/or Manager

Estrella PM, LLC

By:
Its:    Member and/or Manager

"**Assignee**"
Mark D. Hashimoto,

Chapter 11 Trustee for the Bankruptcy Estate
of Theodore Lamont Hansen

Page 4 of 7

Estrella OK, LLC

By: _____

Its: _____

Heathrow Holdings, LLC

By: _____

Its: _____

Interstate Energy, Inc.

By: _____

Its: _____

Junction Market I, LLC

By: _____

Its: _____

Junction Market V, LLC

By: _____

Its: _____

Junction Market VII, LLC

By: _____

Its: _____

Junction Market X, LLC

By: _____

Its: _____

Junction Market XVII, LLC

By: _____

Its:    _____

Low Cost Rentals, LLC

By:    _____
Its:    _____

Trophy Properties, LLC

By:    _____
Its:    _____

## EXHIBIT "A"

BT Holdings of Utah, LLC
1481 Dewey NY, LLC
885 Park Avenue, LLC
1433 S 107 E. OK, LLC
Estrella Group, LLC
Estrella PM, LLC
Estrella OK, LLC
Heathrow Holdings, LLC
Interstate Energy, Inc.
Junction Market I, LLC
Junction Market V, LLC
Junction Market VII, LLC
Junction Market X, LLC
Junction Market XVII, LLC
Low Cost Rentals, LLC
Trophy Properties, LLC